Filed 3/3/14  In re Alyssa R. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ALYSSA R., a Person Coming Under the Juvenile Court Law. | B248141 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ERNEST R.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK97847) |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

Ernest R. (father) appeals from the juvenile court's jurisdictional finding and dispositional order as to his child, Alyssa R. He argues substantial evidence does not support the court's jurisdictional finding that the child was at risk of harm due to the parents' domestic violence and alcohol abuse by mother.[1] We disagree and affirm.

### FACTUAL AND PROCEDURAL SUMMARY

Alyssa R. (born in 2003) came to the attention of the Department of Children and Family Services (Department) as a result of a police response to a homicide at the child's home in December 2012. This was not the family's first dependency proceeding. In April 2006, San Diego County authorities alleged mother emotionally abused the child during two separate incidents. The first case was "evaluated out." In the second, mother said she consumed three cups of wine and diet pills, was evaluated at the hospital, and was released the following day. She told a social worker that her alcohol use had negative effects on her. The referral was closed shortly thereafter. Then, in August 2007, mother was arrested for driving under the influence (DUI) of alcohol with the child in the car. The court ordered summary probation for five years, and her participation in substance abuse programs. After developing a safety plan with the social worker, the referral was closed.

In the incident leading to the current proceeding, it was reported that father killed mother's boyfriend, Joel, by stabbing him 22 times.[2] Sometime before the homicide, mother had told Joel that she needed to divorce father before continuing their affair, which began while father was deployed overseas in Afghanistan. On the night of December 23, 2012, mother left the family home to buy beer and hotdogs. She decided to stop and see Joel, who came outside, shot a gun into the air, and then got into her car. When father called mother, Joel answered and argued with him. Joel held the gun to the phone, made a clicking sound, and said he was on his way to the family home. Father

[1]    Mother is not a party to this appeal.

[2]    At the jurisdiction and disposition hearing, the parties stipulated that father stabbed Joel five times.

2

waited for them outside. After arguing, both men went inside the home. Father said Joel made a hand gesture indicating he had a gun, so father stabbed him. After the Lakewood Sheriff responded, father was detained. No charges were filed because the District Attorney accepted his claim of self defense. The child was asleep in the home throughout the incident. A detective removed her through a window so that she would not see the crime scene.

Following the homicide, a social worker interviewed the parties and developed a safety plan. Mother was to reside with the maternal grandmother. The child was to stay with a maternal aunt, and father was not to live with mother. In January 2013, the social worker revised the safety plan so that mother resided with the child in the maternal grandmother's home. It also planned for the parents to receive counseling for substance abuse, and random drug testing. Later that month, mother tested negative for drugs and alcohol. In February 2013, mother and father consented to the Department placing the child with the maternal grandmother.

On February 19, 2013, the Department filed a petition pursuant to Welfare and Institutions Code section 300, subdivision (b),[3] alleging the parents' alcohol abuse endangered the child and rendered them incapable of caring for her. It also alleged that both mother and father currently abuse alcohol, and have histories of alcohol abuse. At a detention hearing held the same day, the court found a prima facie showing that the child was a person described in section 300, subdivision (b), and ordered her detained with the maternal grandmother. It also ordered family reunification services. The parents were provided monitored visits in a neutral setting, but not simultaneously. The court also ordered referrals for drug and alcohol testing, with individual counseling for the child.

The detention report described the child's reaction to Joel's death. In an interview with a social worker, the child said she was scared. When told of the killing, she burst into tears because she was sad to have never said goodbye. In a later interview, the child confirmed that Joel's death made her sad. The report also detailed the parents' alcohol

---

[3] All further statutory references are to the Welfare and Institutions Code.

3

abuse and history of domestic violence. The child said father sometimes drank "Crown Royal with soda." She also said mother would drink Corona and "'acts mad real quick.'" Both parents would argue when drinking. Father described how mother's drinking caused their marital problems. Mother acknowledged two prior offenses for driving under the influence, but denied that she had a drinking problem. The maternal aunt said she believed mother has a drinking problem.

The report also included father's statement that the couple had a history of domestic violence that began when they were teenagers. He denied that any recent domestic violence occurred, aside from an incident in October 2012 when the child saw father hit mother's hands while she was using her mobile phone. The maternal aunt confirmed the couple had experienced no domestic violence since high school in the 1990s. However, in February 2013, a therapist described the family's core issue as domestic violence, with control being a major factor in the relationship since father offered financial stability and "military support," while mother was unable to contribute similarly.

On March 7, 2013, the Department filed a first amended petition, adding allegations regarding the parents' history of domestic violence. Specifically, it alleged, pursuant to section 300, subdivisions (a) and (b), that the parents' history of domestic violence, including the October 2012 hand slapping incident, an incident in 2004 or 2005 when mother bit father on his back, an argument when father pushed mother, verbal altercations, and the killing of Joel, presented dangers to the child.

In the jurisdictional report, the Department presented evidence of mother's alcohol consumption obtained in interviews with a social worker. The child described how when mother drinks, she "'gets easily annoyed at me when the [television] is not working or when my dog Reina is barking a lot.'" In addition, the child confirmed that the parents drank before Christmas, but denied seeing them use drugs. She recounted an incident in September 2012 when she talked to the maternal aunt by phone at 12:00 a.m. while crying "'because my mom was yelling at me really loud . . . and . . . was drinking. She

4

drank two coronas.'" The child declined the maternal aunt's offer to pick her up, and stayed in her room to avoid bothering mother. The maternal aunt detailed further evidence of mother's alleged alcohol abuse, including drinking during Thanksgiving 2011, when she suspected mother was under the influence of drugs, and at an earlier family gathering at a beach, when mother "was making a scene."

Mother said that she might have a drinking problem "according to what's written in books," but denied having one. She admitted to two prior DUIs and previously drinking four to five beers up to three times per week. She claims that she now drinks only on special occasions. She said her drinking never affected the child. Mother described how she drank more when father was deployed. She reported completing alcohol and rehabilitation programs, but provided no supporting proof. The maternal grandmother said mother had no drinking problem, and was never intoxicated when caring for the child. In addition, father's cousin said that neither parent was "a drunk."

Father confirmed that mother did not have a drinking problem, but said that she drank with Joel on weekends, when he once received a threatening phone call in the early morning. After father returned from deployment in October 2012, mother spent most weekends away from the home, and sometimes would return too late on Monday to take the child to school. He said mother became less patient with the child when under the influence of alcohol. Nevertheless, father emphasized how mother had improved since her prior DUIs, including attending Alcoholics Anonymous and trying to curtail her drinking.

Regarding father's alleged alcohol abuse, the maternal grandmother never saw father under the influence of alcohol, but did see him drink a couple of times. The paternal aunt denied father had an alcohol problem. Father's cousin said father had no drinking problem, although he consumed alcohol occasionally. The child confirmed that father "gets easily mad" when drinking for the same reasons as mother. Mother claimed father has a drinking problem that caused him to act like "a jerk," but that he never

5

harmed the child. Father said he would drink wine and beer with mother, but avoided drinking heavily because he exercised in the morning.

As to the parents' domestic violence, the child said her parents "get along, but sometimes they argue." She denied witnessing any loud shouting or physical abuse, but described trying to cheer up mother after arguments with father. Mother admitted to ongoing conflicts with father since age 15 that involved kicking, biting, slapping, and pulling hair. Most of the violence occurred in high school, and mother said it was not as bad when father returned from his deployment. The maternal grandmother and aunt both confirmed the parents' past physical violence. Similarly, father admitted to domestic violence, but said it stopped when he married mother in April 2002. Nevertheless, in February 2013 mother said she needed counseling to address the domestic violence that had been ongoing since her teenage years.

Mother said that during an argument with father sometime in 2004 or 2005, she bit father on his back while he was holding the child, and the police were called. Father described the incident as atypical. Then in October 2012, father accidentally hit mother's hand, with the child present, although father immediately apologized. The child said it was the only time she saw father hit mother, but that it was only an accident. Father also described it as merely an accident.

At the combined jurisdiction and disposition hearing, father testified that there was no domestic violence since 2003, and that his relationship with mother ended after he returned from deployment in October 2012 and learned of her affair with Joel. He was not living with mother as of March 2013. Father stipulated to stabbing Joel five times, and that the child did not witness the incident. He testified that the child did not experience any nightmares, and was not endangered. The social worker testified that since both parents were participating in individual counseling and no longer living together, she would not object to an order requiring them to participate in domestic violence counseling and returning the child to the parents' homes. The child's counsel argued the court should dismiss the allegation regarding mother's alcohol abuse, since

6

there was no indication she was incapable of providing regular care for the child. Counsel for mother and father both urged the court to dismiss the counts alleging domestic violence. They also argued the allegations regarding their clients' alcohol abuse should be stricken. The Department emphasized the couple's history of domestic violence, but asked the court to strike the allegation regarding Joel's death and dismiss the count alleging father's alcohol abuse. It also recommended the court declare the child a dependent, remove her from parental custody, and order reunification services.

The juvenile court sustained three counts on the petition pursuant to section 300, subdivisions (a) and (b): counts a-1 and b-3, concerning the parents' domestic violence, and count b-1, alleging mother's alcohol abuse. It found the child came within the jurisdiction of the court. However, it rejected count b-2, which alleged father's alcohol abuse. In addition, finding that father's killing of Joel was an act of self defense, it struck the domestic violence allegation specific to that incident in counts a-1 and b-3. The court proceeded to disposition pursuant to section 360, subdivision (b), and "return[ed] [the child] home to mom and dad," ordered the Department to refer the parents to domestic violence counseling and Parents Beyond Conflict.[4] It also ordered referrals for mother to participate in weekly on-demand drug and alcohol testing, and individual counseling for the child. Finally, it took off calendar a hearing on mother's temporary restraining order.[5] Father filed this timely appeal.

---

[4]    The reporter's transcript indicates the court's order to return custody of the child to the parents. The court stated: "The child will be returned to parents forthwith. They can work out the custody arrangements with the social worker." However, the minute order from March 12, 2013 does not reflect this change.

[5]    In a separate proceeding on March 8, 2013, mother sought a temporary restraining order, claiming fear for her safety were father to learn that she filed for divorce. She requested the emergency order because of father's recent killing of Joel. The court denied mother's request, citing no reasonable proof of past acts of abuse.

**DISCUSSION**

Father challenges the trial court's jurisdictional findings with respect to the parents' past domestic violence and mother's alcohol abuse. He contends they must be reversed for lack of sufficient evidence to support them.

Where a parent challenges the juvenile court's jurisdictional findings, we consider the entire record to determine whether substantial evidence supports the court's findings. (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) "Evidence is '"[s]ubstantial"' if it is reasonable, credible and of solid value. [Citation.] We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order, and affirm the order even if other evidence supports a contrary finding. [Citations.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order. [Citation.]" (*Ibid.*)

We consider father's challenge to the jurisdictional finding on count b-1 regarding only mother's alcohol abuse because his parental rights are sufficiently implicated in the potential outcomes of that finding. (*In re Desiree M.* (2010) 181 Cal.App.4th 329, 333 ["A parent has standing to raise issues affecting her interest in the parent-child relationship. [Citation.] 'Where the interests of two parties interweave, either party has standing to litigate issues that have a[n] impact upon the related interests.'"].)

"'[T]he three elements for jurisdiction under section 300, subdivision (b) are: '"(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the [child], or a "substantial risk" of such harm or illness.'" [Citations.]' [Citation.]" (*In re John M.* (2012) 212 Cal.App.4th 1117, 1124.) Here, father argues the evidence is insufficient to support the third element. "Although 'the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection. [Citations.] A parent's past conduct is a good predictor of

8

future behavior.  [Citation.]  'Facts supporting allegations that a child is one described by section 300 are cumulative.'  [Citation.]  Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.'  [Citation.]"  (*In re T.V.*, *supra*, 217 Cal.App.4th at p. 133, italics omitted.)

Count b-1 was sustained on allegations of mother's seven-year history of alcohol abuse and current use.  Substantial evidence also supports this exercise of jurisdiction over the child pursuant to section 300, subdivision (b).  Mother had a history of involvement with the dependency system, including a DUI in 2007 when the child was in the car.  Several relatives described mother's drinking problem, which persisted despite her two DUIs and prior dependency cases.  In fact, mother herself said she might have a drinking problem "according to what's written in books."  As recently as September 2012, the child described how mother became angry and loud while drinking, which caused the child to cry.  Father said mother spent weekends drinking alcohol, and would then return home too late to take the child to school.  Under these circumstances, there was sufficient evidence for the court to conclude that mother's alcohol abuse impacted the child.  (See *In re E.B.* (2010) 184 Cal.App.4th 568, 575 [evidence sufficient to support jurisdictional finding where mother had prior DUI and missed substance abuse tests, and several relatives reported she had alcohol problem].)

Counts a-1 and b-3 were sustained on the allegations that the parents' history of domestic violence included father striking mother on the hand, father pushing mother while she was holding the child, mother biting father while he was holding the child, and verbal arguments in the presence of the child.  Substantial evidence supports this jurisdictional finding pursuant to section 300, subdivisions (a) and (b).  Both parents and several relatives reported the couple engaged in domestic violence since their teenage years.  The abuse included biting, kicking, slapping, and pulling hair.  And although the parents claim the domestic violence stopped, evidence indicates otherwise.  During the pendency of the current case, mother said the violence was ongoing since she was 15, and she needed counseling for it as a result.  The therapist confirmed that domestic violence

9

was a core issue for the family as of February 2013. In at least two incidents, the child was present during the violence. In 2004 or 2005, mother bit father on the back while he held his daughter. And, as we have discussed, in October 2012, father admitted to slapping mother's hand in front of the child, but claimed it was an accident. In an interview with a social worker, the child described how she tried to cheer up her mother following arguments with father. Thus, there was sufficient evidence that domestic violence remained a problem for the family, and created a risk of physical harm for the child. (See *In re T.V.*, *supra*, 217 Cal.App.4th at p. 134 citing *In re Heather A.* (1996) 52 Cal.App.4th 183,193-194 ["Exposing children to recurring domestic violence may be sufficient to establish jurisdiction under section 300, subdivision (b)."].)

Father argues that because the couple's domestic violence stopped several years before the current case, it is insufficient to support the court's exercise of jurisdiction. He relies on *In re Daisy H.* (2011) 192 Cal.App.4th 713, in which the court reversed a jurisdictional finding where physical violence occurred between two and seven years prior and there was no evidence the children were physically exposed to violence. In addition, the parents in that case had separated, so future violence was unlikely. Here, the child witnessed the parents' violence in 2004 or 2005 and in 2012. While the parents claimed to have separated in October 2012, they spent time together in the same home as recently as December 2012, which led to an act of violence. As a result, the court could reasonably conclude that the parents were still susceptible to domestic violence even though they had not lived together since at least March 2013. Accordingly, substantial evidence supported the court's exercise of jurisdiction. (See *In re Heather A.*, *supra*, 52 Cal.App.4th at pp. 193-194 [evidence of continuing violence between father and stepmother was sufficient for jurisdictional finding where at least one incident occurred while child was present].)

Father claims the court based its jurisdictional finding on mother's alcohol abuse that occurred seven years ago. Since then, he contends, mother completed alcohol programs and only drinks socially and on special occasions. Father relies on three cases

10

to demonstrate that mother's previous alcohol abuse, without evidence of a present risk of harm to the child, is insufficient to support the court's exercise of jurisdiction. Father's reliance on these cases is misplaced, since here the trial court also considered evidence of mother's current alcohol abuse and its effects on the child.

The court in *In re David M.* (2005) 134 Cal.App.4th 822 held that evidence of a mother's substance abuse problem was insufficient to support a jurisdictional finding because the "record on appeal lacks any evidence of a specific, defined risk of harm to [the child] resulting from mother's . . . substance abuse." (*Id.* at p. 830.) In contrast, here the record shows how the child's emotional reactions to mother's drinking impacted her. The child described trying to comfort mother after she drank and argued with father. In addition, as recently as 2012, the child talked by phone with her aunt while crying after mother had yelled at her while drinking. Finally, mother has a history of driving under the influence with the child in the car. Unlike in *In re David M.*, the circumstances here indicate a risk to the child.

Father cites *In re James R.* (2009) 176 Cal.App.4th 129, in which a report of a mother's "possible substance abuse" without a history of abuse was insufficient to support a jurisdictional finding. (*Id*. at p. 132.) In contrast, here there was specific evidence of mother's past and present alcohol abuse. Several people described mother's past alcohol abuse. In addition, unlike in *In re James. R.*, mother admitted to a history of alcohol abuse, which was evidenced in her prior DUIs. As recently as September and October 2012, the child and father provided evidence that mother continued to drink.

Father also relies on *In re J.N.* (2010) 181 Cal.App.4th 1010, which held that a "single incident resulting in physical harm absent current risk" is insufficient to support jurisdiction. That case involved a car accident in which two children were injured when their drunken father drove into a street sign. (*Id.* at p. 1023.) In contrast, here mother admitted to a history of two DUIs. There is further evidence that her drinking continued after the incidents, making her angry and loud, which impacted the child. As a result, the limited holding of *In re J.N.*, in a case of a single DUI without evidence "that mother or

11

father consumed alcohol on a regular basis," does not apply here.  (See *id.* at p. 1026.)  Accordingly, there was sufficient evidence to support the court's finding of jurisdiction.

**DISPOSITION**

The dispositional order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

MANELLA, J.

EDMON, J.*

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section  6 of the California Constitution.